# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**JOHN J. TURI,**

      **Plaintiff,**

**v.**                                           **Case No: 5:13-cv-248-Oc-22PRL**

**THOMAS STACEY, STACEY
INTERNATIONAL, STACEY
PUBLISHING LTD, STRUAN
SIMPSON and KEITH YOUNG**

      **Defendants.**

_____

## REPORT AND RECOMMENDATION[1]

Pending before the Court is the *pro se* Plaintiff's Motion for Default Judgment.  (Doc. 39).

Upon a review of this Court's jurisdiction, I submit that the *pro se* Defendants are not subject to

personal jurisdiction here and, therefore, I recommend that the Plaintiff's motion for default

judgment be **DENIED** and this case **DISMISSED**.

## I.   BACKGROUND

On May 29, 2013, Plaintiff initiated this action for alleged copyright infringement, breach

of contract, fraud, and unjust enrichment arising from a publishing contract (the "Agreement") for

Plaintiff's book, *England's Greatest Spy, Eamon deValera*.  (Doc. 1).

In response, Defendants appeared for the limited purpose of moving to dismiss the

complaint for lack of personal jurisdiction, failure to properly serve them, and *forum non*

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

*conveniens*.  (Doc. 3).   The Court agreed that Plaintiff had not properly served Defendants insofar as he failed to comply with the Hague Service Convention.[2]   As a result, the Court quashed service of process as to all Defendants and denied the motion to dismiss without prejudice.   (Doc. 13).   Plaintiff was granted leave to serve Defendants in a manner consistent with the Hague Service Convention and the Court's directives, which it appears he did.[3]   *Id.*

After the Defendants failed to timely respond to the served Complaint, Plaintiff sought, and received, the entry of a Clerk's default.   (*See* Doc. 37).   Plaintiff now seeks a default judgment pursuant to Fed. R. Civ. P. 55(b).   (Doc. 39).   Before simply granting Plaintiff's motion, I reviewed the case to consider this Court's jurisdiction and determined that significant concerns existed with regard to personal jurisdiction over these foreign Defendants.   Accordingly, I directed Plaintiff to show cause as to why his motion for default judgment should not be denied and this case dismissed for lack of personal jurisdiction.   (Doc. 41).   Plaintiff (Doc. 45) and the individual Defendants, Stacey, Simpson, and Young (Docs. 40, 46, & 47) have now responded.[4]

## II.   LEGAL STANDARDS

---

[2] The text of the Convention, practical guides for adhering to it, and other helpful documents are available online. *See* "Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. http://www.hcch.net/index_en.php?act=conventions.text&cid=17.

[3] After moving for the appointment of a special process server, Plaintiff filed documents attesting to be proof of service upon Defendants executed on February 3, 2014.   (Docs. 26-30).   These documents contain certificates that as to Defendants Keith Young, Thomas Stacey, Stacey International, and Stacey Publishing LTD: "[t]he documents were served by posting them through the Defendant's letterbox," a proper method of service under Rule 6.3 (1)(c) of the Civil Procedure Rules of England and Wales.   (Docs. 26-29).   As to Defendant Struan Simpson, the "[d]ocuments were served by leaving through the communal door of the address given."   (Doc. 30).   The documents also bear a stamp reading, "Senior Courts of England and Wales Foreign Process Section."   *Id.*
   The Court directed Plaintiff to provide a written response addressing whether service of process was properly perfected upon each of the Defendants in accordance with the provisions of the Hague Service Convention.   (Doc. 35).   Plaintiff filed a response including the Affidavit of John Pierceall, the Court-appointed process server, who attested that Plaintiff properly perfected service.   (Doc. 36, pp. 2-3).

[4] Plaintiff makes his claims against all the Defendants as if they are one and the same.   While recognizing that Stacy Publishing LTD is a foreign corporation and has not appeared with counsel, each of the individual defendants are plead to be integral to that Defendant (as board members or owners) and so I consider the claims against all of the Defendants in the same manner in which they were plead.

To proceed in federal court, the court must have both subject matter jurisdiction and personal jurisdiction.   Indeed, federal courts are, as we know, courts of limited jurisdiction and, therefore, have an obligation to inquire into their jurisdiction.   *See Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1279-80 (11th Cir. 2001).   "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)."   *Baltin v. Alaron Trading, Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

As to personal jurisdiction, "[a] court must dismiss an action against a defendant over which it has no personal jurisdiction."   *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323–24 (M.D. Fla. 2011).   Although federal trial courts normally face the issue of personal jurisdiction on a motion to dismiss under Fed. R. Civ. P. 12(b)(2), courts may raise the question *sua sponte* when deciding whether to enter a default judgment when the defendant has failed to appear, since a default judgment entered against a defendant who is not subject to personal jurisdiction is void.   *See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("a judgment entered without personal jurisdiction is void," and "the district court committed no error in raising the issue of personal jurisdiction s*ua sponte*"); *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("We hold that a district court may not inquire into its personal jurisdiction and dismiss a case *sua sponte* <u>except</u> when entering a default judgment.") (emphasis added).   Indeed, this Court has an affirmative duty to examine its jurisdiction over the parties when entry of judgment is sought against a party who has failed to plead or otherwise defend.   *See Williams*, 802 F.2d at 1203; *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *cf. Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir.

2010) ("[W]e agree with our sister circuits that before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.").   Accordingly, before the Court can address the merits of Plaintiff's motion for default judgment, it must perform a preliminary analysis as to whether it has jurisdiction to enter a default judgment against these non-appearing British Defendants.   I will now do that.

"[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008).   Of course, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.   *Id.*   A plaintiff must, however, plead sufficient facts to establish a *prima facie* case of jurisdiction over the foreign defendant's person. *Virgin Health Corp. v. Virgin Enters. Ltd*., 393 F. App'x 623, 625 (11th Cir. 2010).

The district court must accept the facts alleged in a complaint as true, to the extent they are uncontroverted.   *See Consol. Dev. Corp. v. Sherritt, Inc*., 216 F.3d 1286, 1291 (11th Cir. 2000). If a defendant sustains its burden of challenging a plaintiff's allegations through affidavits or other competent evidence, a plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own.   *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).   A plaintiff must do more than "merely reiterate the factual allegations in the complaint."   *Id.*   (quoting *Prentice v. Prentice Colour, Inc.*, 779 F.Supp. 578, 583 (M.D. Fla. 1991)).   Where the evidence conflicts, however, the district court must construe all reasonable inferences in favor of a plaintiff.   *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).   "If such inferences are sufficient to

defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." *Id.*

"Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324. When jurisdiction is based on diversity, Fed. R. Civ. P. 4(e) requires that the state long-arm statute determine the assertion of jurisdiction. *Id.* Under this analysis, we look to Florida's long-arm statute. *See* Fla. Stat. § 48.193. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Then, if the state long-arm statute is satisfied, the court *must* analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324; *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

Where a foreign defendant is not subject to personal jurisdiction in any state's courts, Fed. R. Civ. P. 4(k)(2) permits an exercise of jurisdiction grounded on an aggregation of the defendant's nationwide contacts, provided that two conditions are present. *Consol. Dev. Corp.*, 216 F.3d at 1291. First, the plaintiff's claims must arise under federal law; second, the exercise of jurisdiction must be consistent with the Constitution and laws of the United States (which could be met if the exercise of jurisdiction is found to otherwise comport with due process). *Id.*

The first condition is obviously satisfied if there is a federal claim. Because whether there is a federal claim plead is also part of the court's subject matter jurisdiction analysis, I turn to this

question first.   If it is resolved against the Plaintiff (as I submit it is), then personal jurisdiction under Rule 4(k)(2) can never be established.

## III.   DISCUSSION

### A.   Subject Matter Jurisdiction

#### 1.   Federal Question Jurisdiction

Plaintiff attempts to allege one cause of action arising under federal law, to wit: copyright infringement.   It is the sole claim that would support the Court's federal question jurisdiction and allow the Court to consider personal jurisdiction under Rule 4(k)(2).[5]   (Doc. 1, p. 5).   *See Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 863 (11th Cir. 2008) ("Normally, of course, the district court would certainly have subject matter jurisdiction over a copyright infringement claim."); *see also* Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. (1976).

In considering whether a claim has been plead I note that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Indeed, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Id.* (quoting *Twombly*, 550 U.S. at 570).   This is not to say that detailed factual allegations are required, but Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).   Mere recitals of the elements of a claim, with conclusory allegations, "do not suffice:" "the tenet that a court must accept as true all

---

[5] Plaintiff's other claims—breach of contract, fraud, and unjust enrichment—arise under state law and do not confer subject matter jurisdiction on this Court.

of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

In applying the principles of *Ashcroft* and *Twombly* the Court must "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). In doing so, the Court can infer "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682).

Upon review of the parties' pleadings and exhibits, the Court concludes that Plaintiff, having granted Defendants a sole exclusive license to publish his book, lacks the standing required to bring a claim of copyright infringement.[6]   Under the Copyright Act, "[a]ny of the exclusive rights comprised in a copyright . . . may be transferred . . . and owned separately." *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) (citing 17 U.S.C. § 201(d)(2)). In fact, "[t]he owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title." *Id.*   An exclusive license granted by the copyright owner constitutes a transfer of ownership of the copyright rights conveyed in the license. *Id.*   (citing 17 U.S.C. § 101) ("A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance . . . of a copyright or of any of

---

[6] The Court disagrees with Plaintiff's assertion that Defendants "admit copyright infringement." (Doc. 45, p. 2). While Defendants state there may have been an "apparent oversight" (Doc. 45, p. 45, 63) in paying royalties to Plaintiff, Defendants do not appear to have admitted to copyright infringement, nor does Plaintiff appear to have accused them of the same prior to this action.

the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect.

. . .")); *Wales Indus. Inc. v. Hasbro Bradley, Inc.*, 612 F.Supp. 510, 514 (S.D.N.Y. 1985).

Simply stated, copyright "[i]nfringement is the violation of an owner's copyright interest

by a non-owner." *U.S. Naval*, 936 F.2d at 695 (citing *Cortner v. Israel*, 732 F.2d 267, 271 (2d

Cir. 1984)). It is, therefore, "elementary that the lawful owner of a copyright is incapable of

infringing a copyright interest that is owned by him." *Id.* Hence, an exclusive licensee of any of

the copyright rights, though it may breach the contractual obligations imposed by the license,

cannot be liable for infringing the copyright rights conveyed to it. *Id.* (citing *Fantastic Fakes,*

*Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483–84 (5th Cir. Unit B 1981) ("mere breach of covenant

may support a claim of damages for breach of contract but will not disturb the remaining rights

and obligations under the license including the authority to use the copyrighted material")); *see*

*also* 3 M. Nimmer & D. Nimmer, Nimmer On Copyright, § 12.02 at 12–29 (1990) ("Once the

copyright owner grants an exclusive license of particular rights, only the exclusive licensee and

*not his grantor* may sue for later occurring infringements of such rights. Indeed, the licensor may

be liable to the exclusive licensee for copyright infringement if the licensor exercises rights which

have theretofore been exclusively licensed.") (emphasis added).

Plaintiff submits the Agreement (or contract)[7] as evidence of the parties' obligations in

connection with publishing his book. (Doc. 45, p. 19). The Agreement contains a copyright

provision in Clause 2 which states "The Author [Plaintiff] hereby grants the Publishers

[Defendants] the *sole exclusive license* to publish the Work for the legal term of the copyright or

any extension thereof . . . ." *Id.* (emphasis added). The introductory language notes that, "where

the context so admits," the Agreement will extend to the parties' "successors and assigns." *Id.*

---

[7] Referred to as the "Contract" in Defendants' filings.

Plaintiff does not provide any evidence to the Court that this Agreement was terminated, rescinded, or expired.[8]   *See Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224 (E.D.N.Y. 2007) (holding that the licensor's grant of a license to the licensee to utilize the licensor's copyright, which was not terminated, precluded the licensor from asserting a copyright infringement action).   Instead, Plaintiff alleges multiple times that Defendants infringed his copyright by selling his book without paying him royalties due.   (*See, e.g.*, Doc. 1, p. 5; Doc. 45, p. 1, 7, & 10).   As noted above, federal courts have concluded that it is "elementary" that the lawful owner of a copyright is "incapable" of infringing a copying interest that is owned by him. *U.S. Naval*, 936 F.2d at 695; *see also Davis v. Tampa Bay Arena, Ltd.*, No. 8:12-CV-60-T-30MAP, 2013 WL 3285278, at *9 (M.D. Fla. June 27, 2013) ([defendant's] failure to abide by the terms of the implied license, which plaintiff did not rescind, constituted a breach of contract, not copyright infringement; holding that the appropriate remedy for any breach of the covenants is a breach of contract action).

Plaintiff has conflated a claim of copyright infringement with a claim of breach of contract for failure to pay royalties.   Federal courts have held that the payment of royalties pursuant to a contractual agreement is a covenant, and as such, "if the [licensee's] improper conduct constitutes a breach of a covenant undertaken by the [licensee] . . . and if such covenant constitutes an

---

[8] The Court notes that the Copyright provision in Clause 2 is subject to Clause 10, a Right to Terminate provision.   That provision states that "commencing one year from publication date, the Publishers agree that in the event of the Author not receiving a minimum of $5,000 for two consecutive half-yearly payments, the Work *may* be deemed by the Author as out-of-print, and the Author will have the *option* to terminate the Contract with all rights therein reverting to him."   (Doc. 45, p. 21) (emphasis added).

According to the Agreement, Clause 10 may be exercised at Plaintiff's discretion and does not appear to be a condition of the license.   Plaintiff has provided no evidence that he invoked his rights under Clause 10 and deemed his book out-of-print or terminated the Agreement.   Thus, it certainly appears that the Agreement remains in effect.   In addition, Plaintiff's repeated reliance on various provisions of the Agreement throughout his pleadings, particularly the Application of Law provision in Clause 13 (Doc. 45, p. 21), bolsters the Court's conclusion that the Agreement stands.

enforceable contractual obligation, then the [licensor] will have a cause of action for breach of contract, not copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998).

Further undermining Plaintiff's copyright infringement allegation is the fact that Plaintiff only provides evidence that he notified Defendants of their failure to pay royalties, not of copyright infringement. *See Davis,* No. 8:12-CV-60-T-30MAP, 2013 WL 3285278 at *9 ("[plaintiff] frequently informed the [defendant] that it was in violation of the existing agreement"). On August 25, 2010, Plaintiff emailed Defendant Stacey to request payment of $2.50 per book sale for a specified period. (Doc. 45, p. 45). In the correspondence, Plaintiff does not accuse Defendant of copyright infringement. Later in 2012, Plaintiff emailed Defendant Stacey to explain that he would consider entering into another agreement with him if Defendant paid him royalties due. (Doc. 45, p. 72). Again, Plaintiff does not mention copyright infringement. His correspondence with Defendants demonstrates an ongoing business relationship and an expectation that they would continue to work together to publish his book—and pay him under the contract.

Although Plaintiff uses the term "copyright infringement," the evidence demonstrates that he granted Defendants an exclusive license which remains in effect. Thus, the Court finds that while Plaintiff may have a cause of action for breach of contract, he has no cause of action for copyright infringement.[9] As a result, Plaintiff fails to allege grounds for federal question jurisdiction, and, as already noted, cannot avail himself of Rule 4(k)(2) for purposes of personal jurisdiction.

---

[9] Although Plaintiff asserts that the license was fraudulently transferred (and that Defendants aided and abetted, and colluded in such transfer) in the English bankruptcy proceedings (Doc. 1, p. 3 & 5; Doc. 5, p. 5), this Court has no jurisdiction to determine the legality of the international bankruptcy proceedings. *See* 28 U.S.C. §§ 1331-1332 (granting federal courts subject matter jurisdiction in federal question and diversity cases). To the extent Plaintiff attempts to state breach of contract, fraud, conspiracy, and unjust enrichment claims, such claims arise under state law and do not create grounds for this Court's jurisdiction.

## 2.  Diversity Jurisdiction

Now, despite the absence of a federal claim, Plaintiff does appear to have alleged sufficient facts to support the Court's diversity jurisdiction.   *See* 28 U.S.C. § 1332.   Although Plaintiff does not specifically address the citizenship of each Defendant in the complaint, he includes general factual allegations supporting the assumption that Defendants are British nationals.   (Doc. 1, p. 1; Doc. 13, p. 1).   In addition, Plaintiff demands at least $126,837.50, an amount sufficient to meet the $75,000 minimum amount in controversy requirement.[10]   Specifically, Plaintiff demands damages consisting of: a return of his investment of $30,000; royalties of $4,837.50; a minimum of $42,000 as a result of Defendants enriching themselves on the sale of Plaintiff's books; a minimum of $50,000 for failure to publish Plaintiff's book; an unspecified amount of punitive damages; the cost of suit and expenses; and any other relief to which Plaintiff may be entitled. (Doc. 1, pp. 7-8).   Since there appears to be subject matter jurisdiction plead, I will move on to personal jurisdiction more specifically.

## B.  Personal Jurisdiction

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists.   The exercise of jurisdiction must: (1) be appropriate under the state long-arm statute; and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[11]   *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

---

[10]  Defendants claim that a much smaller amount is in controversy: $7,500.   (Doc. 3, p. 4).

[11]  The Court need not further analyze whether it has personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) because it concluded Plaintiff has not successfully alleged a federal claim.   *See supra* Part III.A.1.   I do note, however, that even if a federal claim could be plead, for the reasons discussed *infra* with regard to the due process analysis, Plaintiff cannot satisfy Rule 4(k)(2), as, at a minimum, haling Defendants into Court here would offend the traditional notions of fair play and substantial justice.   *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) ("The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum

### 1.  Florida's Long-Arm Statute

"Florida's long-arm statute is to be strictly construed."  *Sculptchair*, 94 F.3d at 627.   The plaintiff has the burden of demonstrating facts that satisfy the statute's criteria.  *See Rogers v. Nacchio*, 241 F. App'x 602, 605 (11th Cir. 2007).   There are two kinds of jurisdiction under Florida's long-arm statute: specific and general.  *See Stubbs*, 447 F.3d at 1360 n. 3; *Canale v. Rubin*, 20 So. 3d 463, 465 (Fla. 2d DCA 2009).   "[S]pecific jurisdiction is founded on a party's activities *in the forum* that are *related to the cause of action* alleged in the complaint," while "general jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated."  *Stubbs*, 447 F.3d at 1360 n. 3 (citations omitted) (emphasis added).   Although Defendants have not explicitly argued against both specific and general jurisdiction, out of an abundance of caution, the Court will consider both.

### a.  Specific Personal Jurisdiction

In relevant part, Florida's long-arm statute permits the exercise of specific personal jurisdiction over a foreign defendant[12] for any cause of action arising from either: its business activities in Florida;[13] its tortious conduct committed in Florida;[14] its injuries to persons or property within Florida, even if the conduct giving rise to those injuries occurred outside of

---

such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

[12] "Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts . . ."  Fla. Stat. § 48.193 (1)(a).

[13] "Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."  Fla. Stat. § 48.193 (1)(a)(1).

[14] "Committing a tortious act within this state."  Fla. Stat. § 48.193 (1)(a)(2).

Florida;[15] its breach of contract for failure to perform acts required to be performed in Florida;[16]

or a contract containing a *Florida* choice of law provision.[17]  *See* Fla. Stat. § 48.193 (1)(a).

### 1) Carrying on a Business in Florida

For purposes of § 48.193(1)(a)(1), "'the activities of the [defendant] sought to be served

. . . must be considered collectively and show a general course of business activity in the State for

pecuniary benefit.'"  *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09-CV-61436, 2010 WL

1531489, at *12 (S.D. Fla. Apr. 16, 2010) (quoting *Sculptchair*, 94 F.3d at 627).   "The fact that a

foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction

over the foreign defendant." *Id.*  (quoting *Wallack v. Worldwide Machinery Sales*, Inc., 278

F.Supp.2d 1358, 1366 (M.D. Fla. 2003)).

In the Defendants' Fed. R. Civ. P. 12(b)(2) motion to dismiss they challenged the Court's

personal jurisdiction on several grounds: each Defendant is a United Kingdom resident and

conducts no business in the United States; none of the Defendants solicited Plaintiff for any

business, contacted Plaintiff to enter into any business arrangement or contract, or advertised in

the United States; none of the Defendants ever visited Plaintiff or met Plaintiff in the United States;

---

[15] "Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

    a. The defendant was engaged in solicitation or service activities within this state; or
    b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use."
    Fla. Stat. § 48.193 (1)(a)(6)(a) – (b).
[16] "Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state."  Fla. Stat. § 48.193 (1)(a)(7).
[17] "Entering into a contract that complies with s. 685.102."  Fla. Stat. § 48.193 (1)(a)(9).
    Section 685.102 provides for specific jurisdiction if the parties' contract contains a choice of law provision selecting Florida law.   "Notwithstanding any law that limits the right of a person to maintain an action or proceeding, any person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of the law of this state, in whole or in part, has been made pursuant to s. 685.101 and which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state."  Fla. Stat. § 685.102.

and Plaintiff retained a literary agent in London to contract with Defendants to publish Plaintiff's book.  (Doc. 3).  Defendants subsequently submitted pleadings and affidavits that deny that Defendants "conducted any business in the United States" (Doc. 46, p. 2), have an office or agency in Florida (Doc. 47, p. 3), operated, conducted, or engaged in business in Florida, own property in Florida, entered into an insurance contract, or breached a contract by failing to perform acts required to be performed in Florida (Doc. 47, p. 4).  Further, Defendants assert that they have never visited Florida to conduct business here and have never invoked the benefits and protection of this State's laws.   (Doc. 47, p. 4).

Plaintiff challenges Defendants' assertion that they conduct no business in the United States by alleging that Defendants do business in the United States "under contract with Midpoint Book Sales and Distribution Co. [("Midpoint")] with offices in Arkansas, New York, Kansas, California, and Michigan" (Doc. 5, p. 2), Barnes & Noble, and Amazon, a bookseller with "internet outlets"[18] in Florida (Doc. 45, p. 3).  Plaintiff fails to allege a particular amount of money collected by Defendants as a result of their alleged sales in Florida through these distributors, nor does he allege the length of time Defendants have associated with them in Florida.  Plaintiff simply repeats over and over again that Defendants have contracted with these three entities and sold his book through them in the United States and Florida.   Plaintiff identifies at most two sales through the distributor Barnes & Noble: his own purchase of his book, presumably delivered to Florida, (Doc. 5, p. 11), and his daughter's purchase of his book, delivered to Churchville, Pennsylvania (Doc. 45, p. 42).  The Court notes that the Barnes & Noble e-receipt fails to even state the title or author of the item sold.  Even more perplexing to the Court than these vague allegations are Plaintiff's conflicting assertions: on one hand he argues that Defendants failed to

---

[18] The Court is unaware of the meaning of Plaintiff's term, "internet outlets."

publish his book worldwide, while on the other he asserts that they sold his book in the United States and Florida through the three distributors. Plaintiff's attempt to hale Defendants into this Court with these facts can only be described as tenuous at best.

More devastating to Plaintiff's claim than his failure to establish the agents' ongoing business activity in Florida, however, is his failure to demonstrate Defendants' operational control over the three agents. "The elements of an agency relationship under Florida law are (1) acknowledgement [sic] by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Harbaugh v. Greslin*, 436 F. Supp. 2d 1315, 1320 (S.D. Fla. 2006) aff'd, 218 F. App'x 950 (11th Cir. 2007) (citing *State v. Am. Tobacco Co.*, 707 So.2d 851, 854 (Fla. Dist. Ct. App. 1998)). "The issue of control is critical to the determination of agency." *Id.* As the Fourth District Court of Appeals held in *American Tobacco*, a litigant needs to demonstrate "operational control" in order to demonstrate that a principle operated, conducted, engaged in, or carried on business activities within Florida through agents pursuant to § 48.193(1)(a). *Id.* Evidence of operational control includes, for instance, evidence that the principal controlled the internal affairs of an agent or determined how the agent operated on a daily basis. *Id.* (citing *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177–78 (9th Cir. 1980)).

Plaintiff has failed to set forth any facts demonstrating that Defendants exercised any control whatsoever over Midpoint, Amazon, or Barnes & Noble, even if Plaintiff's bald assertions as to their ties to Florida, especially as they relate to Plaintiff's underlying claim, could be sufficient (which they are not).[19] Therefore, I find that Defendants are not subject to specific personal jurisdiction under Fla. Stat. § 48.193(1)(a)(1).

---

[19] The Court notes that Plaintiff also attaches as an exhibit a "note confirming another contact in the United

**2)  Commission of a Tortious Act in Florida**

Fla. Stat. § 48.193(1)(a)(2) permits jurisdiction where the nonresident commits a tortious act within this state.   *See* § 48.193(1)(a)(2).   Plaintiff alleges that Defendants committed tortious acts of fraud, fraudulent transfer of assets, and conversion of property.   (Doc. 1).   Specifically, Plaintiff accuses Defendants of "knowingly and with intent to deceive" making "false statements" and "misrepresentation[s] of material fact"[20] by failing to pay him royalties, "bilking" him out of his investment, and concealing and fraudulently transferring assets in a bankruptcy proceeding with the goal of depriving Plaintiff of royalties and services, and deceiving Plaintiff by not publishing his book worldwide.   (Doc. 1, p. 2-6).   Plaintiff, however, fails to allege that any of these tortious acts occurred in Florida.   In fact, Plaintiff repeatedly accuses Defendants of *failing* to market or sell his book "worldwide," (*see e.g.*, Doc. 1, p. 7) which ostensibly includes Florida. The bankruptcy proceeding, it appears undisputed, occurred in England, not the United States, and not Florida.

In addition, the exhibits attached by Plaintiff presumably to support his claim that he was not paid as he should be for the sale of his book, undermines his theory of fraud.   Plaintiff's own exhibits demonstrate that Defendants' alleged fraudulent failure to pay royalties was an "oversight," which both Max Scott[21] and Defendant Stacey attempted to correct.   (Doc. 45, p. 45

---

States by Capuchin Classics, a publishing company controlled by Defendantsa [*sic*] Stacey, Simpson, and Young."   (Doc. 45, p. 16; Doc. 45-1, p. 7).   The exhibit itself, however, states that Stacey International and Capuchin will relaunch as Stacey Publishing, and will remain at its Kensington[, England] offices. (Defendants' filings state that Capuchin was a "previous imprint" of Stacey Arts Ltd and is now part of the successor company, Stacey Publishing Ltd.   (Doc. 40, p. 3; Doc. 47, p. 2)).   Further, Plaintiff fails to show any contact between Capuchin and Florida whatsoever, much less contact with Florida arising from his claims.

[20] The Court construes Plaintiff's claim as one of fraudulent misrepresentation.

[21] Max Scott was a Managing Director at Stacey International.   (Doc. 45, p. 45).

& 63).   That is, Plaintiff's own exhibits seem to negate his accusations of knowledge and intent, one of the requisite elements of a fraud claim in Florida.[22]

Again, at best, Plaintiff may have stated a cause of action for breach of contract, but not fraudulent misrepresentation.   The crux of his fraud occurred, if he is to be believed, in proceedings overseas.   While that alleged fraud may have affected him, I am in no position to opine on those proceedings or question the effect of those proceedings on this Plaintiff.   The place to challenge those proceedings is there.[23]

Whatever he may argue about fraud on a foreign court, at the end of the day, he was in a contractual relationship with Defendants (the contract binding, as discussed, on successors and assigns), and this case is about a breach of *that* contract.   With regard to fraud, then, even under a broad reading of the statute,[24]  I cannot say, on these facts and given Plaintiff's filings, that he can avail himself of § 48.193(1)(a)(2).

### 3)  Injury Arising Out of Act or Omission

Florida's long-arm statute provides for personal jurisdiction over a defendant that causes injury to persons or property within the state arising out of an act or omission by the defendant outside the state if the defendant was engaged in certain activities.   Fla. Stat § 48.193(1)(a)(6)(a)-(b).   Both the Florida Supreme Court and the Eleventh Circuit have held, however, that this

---

[22] The essential elements of fraud are: (1) a false statement of fact: (2) known by the defendant to be fraudulent at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage to the plaintiff.  *Abbate v. Nolan*, 228 So. 2d 433, 435 (Fla. Dist. Ct. App. 1969).

[23] In fact, Defendants have claimed that they are willing to submit to the jurisdiction of the courts of England and Wales.   (Doc. 3, p. 3).

[24] Florida's courts are deeply divided on the issue of whether a tortious act committed outside the state resulting in injury inside the state subjects the actor to jurisdiction in Florida under subsection (1)(a)(2). *See Posner v. Essex Ins. Co*., 178 F.3d 1209, 1216 (11th Cir. 1999).   The Court is aware of the Eleventh Circuit's consistent application of the broader construction of this subsection: finding personal jurisdiction exists where a defendant's tortious act outside the state caused injury in Florida.   *See id.*

provision does not apply when a plaintiff suffers only economic damages within the state.   *See Sun Bank v. E.F. Hutton, Inc.*, 926 F.2d 1030, 1033 (11th Cir.1991) ("'The Florida Supreme Court has decided that a purely economic injury . . . is insufficient to confer jurisdiction over a defendant under s. 48.193(1)(f).'"); *Prentice*, 779 F.Supp. at 584 ("Plaintiff has alleged no personal injury or property damage, but only breach of contract.   There is therefore no personal jurisdiction under Section 48.193(1)(f) on the basis of Defendant 'actively soliciting business' within this state."); *Aetna Life and Casualty Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992 (Fla. 1987) (provisions . . . do not apply to situations in which only economic damages are suffered within the state).   When no personal injury or physical property damage have occurred, the statute does not confer personal jurisdiction.

Plaintiff alleges economic injury in the form of Defendants' failure to pay royalties, but he does not allege personal injury or property damage.   *See Tara Productions,* 2010 WL 1531489 at *14 ("Plaintiff has not alleged she has suffered any personal injury or injury to property and relies solely on her economic injury of nonpayment of royalties. . . . Therefore, the Court concludes that Plaintiff has failed to establish that the Court has personal jurisdiction over [defendant].")   As a result, § 48.193 (1)(a)(6) is inapplicable here.

### 4)   Breach of Contract/Acts Performed in Florida

Section 48.193(1)(a)(7) provides that statutory long-arm jurisdiction may be asserted over a nonresident for "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state."   Failure to pay a contractual debt where payment is due to be made in Florida is sufficient to satisfy Florida's long-arm provision that refers to contractual acts "required" to be performed in Florida.   *Global Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 468 (Fla. Dist. Ct. App. 2003) (citing *Hartcourt Cos. v. Hogue*, 817 So.2d 1067, 1070 (Fla.

5th DCA 2002)).   Florida courts have consistently held that where the contract is silent as to place of payment, it is presumed to be the place of residence of the payee.   *Id.* (citing *Buto v. Sirius Int'l Ins. Co.*, 807 So.2d 674 (Fla. 3d DCA 2001); *Harris v. Caribank*, 536 So.2d 394 (Fla. 4th DCA 1989); *First Nat'l Bank of Kissimmee v. Dunham*, 342 So.2d 1021, 1022 (Fla. 4th DCA 1977) (stating "[t]he note does not mention the place of payment so it is payable at the residence of the payee")).

Plaintiff does not specifically allege that the Court should exercise jurisdiction due to Defendants' failure to pay royalties in Florida.   For the sake of diligence, however, the Court will address the issue.   Here, while the Agreement does not specifically state where payment would be made, under the foregoing case law, it would be presumed that payment was to be made in New Jersey, because Plaintiff's residence at the time the parties executed the Agreement was Princeton, New Jersey.   (Doc. 3, p 4).   As the Agreement in no way hints at the existence of an obligation to make payments in Florida (and why would it, with Plaintiff residing in New Jersey at the time), the burden shifts back to Plaintiff.[25]   Plaintiff does not address the alleged existence of an obligation to make payments within Florida, a necessary component of his case.   *See Prentice*, 779 F.Supp at 588.   Defendants' pleadings refute any contractual obligation regarding payment to Plaintiff in Florida, as they state that Plaintiff resided in New Jersey when they executed the Agreement.   (Doc. 3, p. 4); *see id.* at 587-88 (finding defendants had no control over plaintiff's decision to move from Texas, where the contracts were signed, to Florida and declining to base a finding of personal jurisdiction on an obligation to make payments within Florida because plaintiff failed to meet his burden).

---

[25] It is unclear from the pleadings when, if ever, Plaintiff informed Defendants of his relocation to Florida. The Agreement shows no indication that Defendants could have contemplated at the time of contracting that Plaintiff would relocate to Florida and that it would be necessary to make payments in Florida, let alone defend itself in another forum.

Plaintiff does not assert Defendants breached the contract by failing to perform any other acts required by the Agreement to be performed in Florida.   Defendants argue that no part of the Agreement was "performed or designed to be performed by any of the Defendants in the United States," let alone Florida.   (Doc. 3, p. 2).   Thus, Defendants' alleged failure to make payment in Florida would not meet the requirements of the long-arm statute.

## 5) Choice of Law

Florida's long-arm statute provides for personal jurisdiction over a party who enters into a contract containing a Florida choice of law provision *and* submits to the jurisdiction of Florida courts.  Fla. Stat. § 48.193 (1)(a)(9).   Plaintiff repeatedly quotes Clause 13 of the Agreement to support his jurisdictional argument: "[t]he law applicable to this Agreement shall be the law of the United States of America."   (Doc. 1, p. 4; Doc. 5, p. 2; Doc. 45, p. 21).   Plaintiff also asserts that Defendants agreed to be bound by the "American venue" and submitted to the jurisdiction of the United States Courts under Clause 13.

Plaintiff, however, fails to allege, and cannot show, that the Agreement with Defendants is governed by Florida law.   Consistent with Plaintiff's allegation, the Agreement provided it would be governed by the laws of the United States, but specified no particular state law.   Further, the Agreement contains no jurisdictional or venue provisions.   Indeed, Plaintiff quotes no language in which Florida, or the United States, for that matter, is the agreed-upon venue.

Without more, the Agreement's choice of law provision—particularly one that only specifies the United States, not Florida—is insufficient to establish long-arm jurisdiction over a nonresident defendant here.   Moreover, Defendants have not submitted to the Court's jurisdiction.[26]   As the Court noted in its order to show cause (Doc. 41), to the extent Plaintiff relies

---

[26]  Again, Defendants have agreed to submit to the jurisdiction of the courts of England and Wales.

on the choice of law provision in the Agreement, under Florida law, that clause alone cannot subject Defendants to personal jurisdiction—even if it specified Florida law.   *See Brown v. Press Repair Eng'g Sales & Serv., Inc.*, 807-CV-931, 2008 WL 141499 (M.D. Fla. Jan. 11, 2008) (finding that plaintiff failed to establish personal jurisdiction over defendants under Florida's long-arm statute, despite a choice of law provision in a forbearance agreement specifying Florida law) (citing *deMco Techs., Inc. v. C.S. Engineered Castings, Inc*., 769 So.2d 1128, 1132 (Fla. 3d DCA 2000) (choice of laws provision, without more, is insufficient to establish long-arm jurisdiction over a nonresident defendant)).   Thus, a clause providing that the laws of the United States would govern the Agreement would not constitute a consent by Defendants to jurisdiction in this state.

### b.  General Jurisdiction

Section 48.193(2) permits the court to exercise personal jurisdiction, regardless of whether or not the claim arises from defendant's activity within the state, if the defendant is engaged in substantial and not isolated activity within this state.   *See* Fla. Stat. § 48.193(2).

"This provision allows the district court to assert general personal jurisdiction over a nonresident defendant, who has 'substantial and not isolated activity within' Florida, even when that activity is unrelated to the cause of action being litigated."   *Stubbs*, 447 F.3d at 1361; *see also Vos, B.V. v. Payen*, 15 So. 3d 734, 736 (Fla. 3d DCA 2009); *Trs. of Columbia Univ. in City of N.Y. v. Ocean World*, S.A., 12 So. 3d 788, 793 (Fla. 4th DCA 2009).   To satisfy the "substantial and not isolated activity" requirement, Plaintiff must demonstrate that Defendants had "continuous and systematic general business contact" with Florida.   *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006); *Gadea v. Star Cruises, Ltd.*, 949 So.2d 1143, 1145 (Fla. 3d DCA 2007); *Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999).   "The requisite threshold of 'continuous and systematic' contacts is significantly more demanding than the

showing necessary to establish specific jurisdiction because section 48.193(2) does not require any connection between a plaintiff's claim and the defendant's Florida activities." *Vos, B.V.*, 15 So. 3d at 736.

No such showing can be made here. Plaintiff has not alleged that Defendants have any contact with Florida beyond their interaction with Plaintiff himself and distributors they engaged which allegedly posted his book on their websites and *may* have sold one or two books in Florida.[27] To the extent Plaintiff alleges Defendants and their three distributors marketed or solicited business in Florida, courts have not "evince[d] any willingness or rationale to find solicitation activities alone sufficient grounds for the assertion of general jurisdiction." *See Prentice*, 779 F.Supp. at 584. Moreover, Plaintiff's complaint repeatedly accuses Defendants of failing to publish Plaintiff's book worldwide, a direct contradiction to Plaintiff's assertion that Defendants market and sell the book in the United States and specifically Florida. (Doc. 1, p. 3, 6, 7). And, as discussed above, Defendants' motion to dismiss for lack of personal jurisdiction, as well as the accompanying affidavits of Defendants Simpson and Young make plain that they have no business contacts with the state of Florida. (Docs. 46 & 47). Defendants' business dealings with Plaintiff alone are not enough to establish general jurisdiction, when balanced against Defendants' lack of any physical or business contact here.

Based upon the record, Florida's long-arm statute does not provide a basis for subjecting Defendants to general jurisdiction.

### 2. Due Process

---

[27] As noted above, Plaintiff submits a Barnes & Noble receipt as evidence that his book was being sold in 2013. The receipt, however, fails to even specify the name of his book. (Doc. 45, p. 42). Further, the receipt states that the product was being shipped to Churchville, Pennsylvania, not Florida. In addition, Plaintiff claims to have purchased one copy of his book, which presumably was shipped to him in Florida.

Even if Florida's long-arm statute could be satisfied, due process precludes personal jurisdiction in this case.  "The requisite minimum contacts required by due process are not built into Florida's long-arm statute."  *Voorhees v. Cilcorp, Inc.*, 837 F. Supp. 395, 399 (M.D. Fla. 1993), as clarified (Nov. 16, 1993) (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500 (Fla.1989)).   Where a defendant has not established "minimum contacts" within the forum state, an allegation that the defendant is subject to the requirements of the forum's long-arm statute is insufficient to establish personal jurisdiction because the constitutional requirements of due process are not necessarily satisfied.  *Id.*   (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Jet Charter Service, Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990); *Venetian Salami*, 554 So.2d 499 (holding that "mere proof of any one of the several circumstances enumerated in [Florida's long-arm statute] . . . does not automatically satisfy the due process requirement of minimum contacts").   Therefore, the examination turns to whether Plaintiff has established the existence of sufficient "minimum contacts" with Florida so that the exercise of jurisdiction over Defendants would not offend "traditional notions of fair play and substantial justice."   *Advanced Bodycare Solutions LLC v. Thione Int'l, Inc.*, 514 F. Supp. 2d 1326, 1330-31 (S.D. Fla. 2007) aff'd, 524 F.3d 1235 (11th Cir. 2008) (quoting *Burger King*, 471 U.S. at 463).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"   *Burger King*, 471 U.S. at 471–72 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).   "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (citing *Int'l Shoe Co.*, 326 U.S. at 316).

The Eleventh Circuit has adopted the following three-part test to decide whether the minimum contacts requirement is met: "(1) the contacts must be related to the plaintiff's cause of action; (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there." *Posner*, 178 F.3d at 1220 (citing *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (internal quotations and punctuation omitted).

### a. Minimum Contacts

As an initial matter, the Court notes that simply contracting with Plaintiff, a Florida resident, is not enough to subject nonresident Defendants to personal jurisdiction, since, without more, it does not provide minimum contacts to satisfy due process requirements. *Voorhees v. Cilcorp, Inc.*, 837 F.Supp. 395, 399 (M.D. Fla. 1993); *Ganiko v. Ganiko*, App. 1 Dist., 826 So.2d 391 (2002), rehearing denied.

To establish minimum contacts, then, Plaintiff relies on Defendants' relationships with Midpoint, Barnes & Noble, and Amazon insofar as he alleges that they sell his book and that Defendants have failed to pay him royalties on those sales. Plaintiff does not, however, specifically allege that Defendants purposefully targeted their activity to the residents of Florida; he merely alleges that their contractual relationships with these entities constitute the requisite minimum contacts with the forum.

Courts in this Circuit have found that a defendant's contractual relationship with an Internet company facilitating the sale of books to all Internet users does not provide a basis to exercise

personal jurisdiction over the defendant.  *See Celorio v. Google Inc.*, 872 F. Supp. 2d 1327, 1333 (N.D. Fla. 2012) report and recommendation adopted, No. 1:11CV79-SPM/GRJ, 2012 WL 1795213 (N.D. Fla. May 17, 2012) (finding that to exercise personal jurisdiction over a defendant with a contractual relationship with Google, where Google facilitated the printing of books for Internet customers, would violate due process).   Simply because an Internet company selling a product on a website has an agent in Florida and does business in Florida, jurisdiction over the defendant cannot be established based on the Internet company's contacts with the forum.  *See id.* In such a situation, courts have found that to extend jurisdiction in Florida to any company that contracts with such an international corporation "would thwart the due process protections that underlie the personal jurisdiction analysis."  *Id.*

Such is the case here.  Plaintiff alleges that Defendants' contractual relationships with Midpoint, Barnes & Noble, and Amazon confer personal jurisdiction on Defendants. Specifically, Plaintiff notes that Midpoint has offices throughout the country (but does not identify a Florida location), Barnes & Noble is an American bookseller (again, Plaintiff does not identify a Florida connection), and Amazon is a bookseller with internet outlets throughout the United States and Florida (whatever that may mean).   (Doc. 45, p. 3).   In support of these contentions, Plaintiff offers Stacey International's catalog noting Midpoint as its trade representative in the United States (Doc. 45, p. 35); a list of titles Midpoint offered for sale, including his own book (Doc. 45, p. 67); a Midpoint "publicity piece" on his book (Doc. 45-1, p. 14); and a Barnes & Noble sales receipt from Plaintiff's daughter's purchase of the book (Doc. 45, p. 42).

Courts have stated that the focus of due process analysis should properly remain on traditional jurisdictional principles even where the lawsuit involves Internet activity.  *See Instabook Corp. v. Instantpublisher.com*, 469 F.Supp.2d 1120, 1125 (M.D. Fla. 2006).   Courts in

this District have noted that "the fact that the website of a company that sells products in Florida can be reached via a link on Defendants' website is too narrow a thread on which to find meaningful 'contact' for the purposes of due process." *Dynatech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1348 (M.D. Fla. 2007). Here, Plaintiff does not specifically allege that Defendants have a website which links to any of the agents' websites, or that Defendants operate a website at all. He does, however, attach as an exhibit a screen shot of a Stacey International/Carter & Mears website selling his book via a link to Amazon.[28] (Doc. 45, p. 43 & 75). But, consistent with *Dynatech Corp.*, even if Defendants operated a website which linked to Midpoint, Barnes & Noble, or Amazon's websites, such activity would be insufficient to find minimum contacts. *See id.* at 1347 (noting that the "possibility that Florida consumers could purchase products through [prior versions of defendants'] website would not amount to a purposeful contact under traditional jurisdictional principles"). Further, while all of the distributors' websites likely are as accessible from Florida as they are from any other state or anywhere in the world where Internet access is available, such accessibility does not amount to "purposeful availment" of conducting activities with Florida. *Dynatech*, 523 F.Supp.2d at 1348 (citing *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir.2005) (pointing out that the defendant's website was "not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet")).

In addition, Defendants are not subject to personal jurisdiction in Florida simply because those entities with which it has contracted may have agents, offices, or do business in Florida. "It

---

[28] The nature and extent of the business relationship between Stacey International and Carter & Mears is unclear. Plaintiff alleges no facts demonstrating any connection between this entity or website and Florida.

is . . . well settled that a defendant is not subject to jurisdiction in Florida just by having a contractual relationship with a Florida based company."   *Rexam Airspray, Inc. v. Arminak*, 471 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007) (citing *Wallack v. Worldwide Machinery Sales, Inc*., 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003)).   Moreover, Plaintiff does not even allege that the distributors are Florida-based companies.   He presents no evidence that Defendants have developed a significant relationship with any additional Florida companies or engaged other Florida companies for substantial printing or other services on behalf of Defendants.   *See id.*   He does not allege that Defendants (or their agents, for that matter) have directed their activities at Florida.   (On the contrary, he alleges multiple times that Defendants *failed* to publish his book worldwide.)   He merely alleges that Defendants have contracts with these companies and offers two instances of sales: one allegedly to him in Florida, and one to his daughter in Pennsylvania. *See Instabook*, 469 F.Supp.2d at 1126 (finding that, even though the defendant had a commercial, interactive website, two alleged sales in Florida were not sufficient to support the court's exercise of personal jurisdiction over the defendant).

Defendants undisputedly have no offices, employees, or agencies in Florida, have not met Plaintiff in Florida, and do not own property in Florida.   There is no evidence that Defendants are licensed to do business in Florida, have income from direct Florida sales, targeted Florida residents through an advertising campaign, hold any bank account or have investments in Florida, nor pay taxes here.   As mentioned above, at the time the parties executed the Agreement, Plaintiff resided in New Jersey, not Florida.   Thus, Plaintiff has not presented evidence supporting that Florida was a predictable forum for Defendants or that they directed their activities to this State.

### b.   Fair Play and Substantial Justice

The burden of proof is on Defendants to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King*."   *Avocent Huntsville Corp.*, 552 F.3d at 1332; *Burger King*, 471 U.S. at 477.   The five *Burger King* factors to weigh in determining whether exercising personal jurisdiction over Defendants would offend notions of fair play and substantial justice are: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."   *Id.*

The Court finds that the burden on Defendants to litigate in Florida would be substantial given that Defendants all reside in the United Kingdom.   In addition, all of the books and records associated with the Agreement are maintained in the United Kingdom, and the majority of the parties and all of the witnesses, except Plaintiff, reside there.   (Doc. 3, p. 4).   Considering the very few (if any) contacts Defendants have with the state, Florida's interest in the issue is quite limited.[29]   Even though it would be more convenient for Plaintiff to obtain relief in Florida, this convenience is far outweighed by Defendants' burden to litigate here.   Thus, these factors weigh against a finding of jurisdiction over Defendants.

---

[29] Even if Plaintiff had established personal jurisdiction in any way, which he has not, the Court is doubtful that Florida would be the proper forum under a *forum non conveniens* analysis.

## IV.  CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment is due to be **DENIED** and the case **DISMISSED** for lack of personal jurisdiction.

Recommended in Ocala, Florida November 25, 2014.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy